UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY,<br>Plaintiff,<br>v.<br>RED ROCK HOUNDS, *et al.*,<br>Defendants. | Case No. 3:20-cv-00272-MMD-BNW<br><br>ORDER |
| RED ROCK HOUNDS, *et al.*,<br>Counterclaimants,<br>v.<br>THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, *et al.*,<br>Counter-Defendants. | |
| BEEHIVE INSURANCE AGENCY, INC.,<br>Third-Party Plaintiff,<br>v.<br>MOORE CLEMENS & CO., INC.,<br>Third-Party Defendant. | |

## I. SUMMARY

This is a declaratory relief action to determine an insurance company's duty to defend or indemnify its insureds. Plaintiff Cincinnati Specialty Underwriters Insurance Company seeks declaratory judgment that under the commercial insurance policy ("Policy") they issued to Defendants, Red Rock Hounds and Lynn Lloyd, it has no duty to defend or indemnify Defendants in the action interested party Tracy Turnbow ("Turnbow")

brought against Defendants in Nevada state court ("Turnbow Action").[1] (ECF No. 1.) Plaintiff argues that four exclusions to the Policy apply to the Turnbow Action, and therefore, there is no coverage. (*Id.*) Before the Court is Turnbow's motion to dismiss ("Motion to Dismiss"), arguing that Plaintiff's complaint fails to state a claim upon which relief can be granted. (ECF No. 10.) Defendants joined the Motion to Dismiss (ECF No. 14) and moved, in the alternative, to stay the case pending resolution of the Turnbow Action (ECF No. 15 at 7).[2] Because Plaintiff's complaint indeed fails to state a claim upon which relief could be granted, and as further explained below, the Court will grant the Motion to Dismiss. Accordingly, the Court will also deny the Motion to Stay as moot.

## II. BACKGROUND

The following facts are adapted from the Complaint. Defendants run mounted coyote hunts in which patrons ride on horseback accompanied by a pack of hounds. On or about September 25, 2019, Turnbow was on Defendants' premises feeding horses. (ECF No. 1 at 2.) The horse Turnbow was feeding, Indy, "suddenly and unexpectedly kicked [Turnbow] in the back of her skull neck" and proceeded to stomp on her body, causing her further injury. (*Id.*) On January 14, 2020, Turnbow filed a complaint in state court against Defendants, asserting claims for negligence and strict liability. (ECF Nos. 1-1 at 1, 10 at 1.) Turnbow alleges that Defendants knew Indy was aggressive, that Indy was prone to attack and injure people, and that another person had been attacked by Indy prior to the incident that injured Turnbow. (ECF No. 1 at 2.)

Plaintiff issued Defendants the Policy that was in effect from June 30, 2019 to June 30, 2020. (*Id.* at 3.) The Policy purports to provide coverage for "bodily injury" and "property damage" that "takes place in the coverage territory" and "occurs during the policy period." (*Id.* at 4.) But that coverage is subject to several exclusions. (*Id.* at 5-7.)

---

[1]That case is currently pending in the Second Judicial District Court of the State of Nevada. *Turnbow v. Red Rock Hounds*, Case No. CV20-00080 ("Turnbow Action").

[2]The Court also reviewed the parties' related responses and replies to both motions. (ECF Nos. 27, 28, 30, 31, 32.)

Presently, Plaintiff is defending Defendants in the Turnbow Action under a reservation of rights. (*Id.* at 4.) On May 7, 2020, Plaintiff filed this action seeking a declaratory that under the Policy, it has no duty to defend or indemnify Defendants in the Turnbow Action. (*Id.* at 7-8.)

While the parties are completely diverse, Turnbow originally pled damages "in excess of $15,000." (ECF No. 1-1 at 7.) In response to the Court's order to show cause, Plaintiff demonstrated that the actual amount in controversy in the Turnbow Action is over $100,000, thus satisfying the prerequisites of diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 54.)

## III. DISCUSSION

Turnbow moved to dismiss Plaintiff's request for declaratory judgment as to three stated exclusions for failure to state a claim upon which relief could be granted. (ECF No. 10 at 2.) As to the fourth exclusion, Turnbow asks that the Court either stay or dismiss Plaintiff's claim for lack of jurisdiction because it is not ripe. (ECF No. 10 at 2.) Defendants joined the Motion to Dismiss and request, in the alternative, that the Court stay this case pending the outcome of the Turnbow Action.[3] (ECF No. 15.) As explained below, the Court will grant Turnbow's Motion to Dismiss—and will therefore deny the Motion to Stay as moot.

### A. Jurisdiction

Because Turnbow asserts that a portion of Plaintiff's requested relief is not yet ripe and Defendant's Motion to Stay raised concerns about duplicative litigation and prejudice,

[3]The arguments raised in Defendants' Motion to Stay prompted the Court to consider its jurisdiction. *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) ("[T]he Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority.") (internal quotations omitted). Because Turnbow originally pled damages "in excess of $15,000" in the Turnbow Action (ECF No. 1-1 at 7), the Court ordered Plaintiffs to show cause that the amount in controversy requirement for diversity jurisdiction is met (ECF No. 51). *See Dizol*, 133 F.3d at 1222 (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950)) (reasoning that the Court must establish it would have jurisdiction over the underlying dispute because the Declaratory Judgment Act did not enlarge the Court's jurisdiction, only provided a remedy for matters that fall within the Court's authority). The Court is satisfied with Defendants' response that the amount in controversy of the underlying action exceeds $100,000. (ECF No. 54.)

the Court is compelled to examine its jurisdiction over this action. But because jurisdiction under the Declaratory Judgment Act is discretionary, the Court also considers whether the prudential *Brillhart* factors recommend exercising that jurisdiction. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). Because the Court finds that it does have subject-matter jurisdiction over this action and that the *Brillhart* factors do not weigh in favor of abstention, the Court will exercise its discretion to hear this case.

A lawsuit seeking federal declaratory relief must (1) "fulfill statutory jurisdictional prerequisites" and (2) present an "actual case and controversy within the meaning of Article III, section 2 of the United States Constitution." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950)); *see also* 28 U.S.C. § 2201(a). In a declaratory relief action, the amount in controversy for diversity jurisdiction purposes is "the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). When an insurer contests the applicability of its liability coverage to a particular issue, the value of the object in litigation is "the value of the underlying potential tort action." *Budget Rent-a-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997). An insurer's declaratory relief action to determine a duty to defend and indemnify their insured in a pending state court case creates an actual case or controversy within the meaning of Article III, even when the underlying liability action has not yet proceeded to judgment. *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (citing *Md. Casualty v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941)).[4]

This case is justiciable. Plaintiff's request that the Court determine its legal duty to defend and indemnify Defendants in the underlying Turnbow Action is an actual case and controversy within the meaning of Article III. *See Kearns*, 15 F.3d at 144. Moreover, with

---

[4]Whether a declaratory relief action seeking only to determine a duty to indemnify is ripe prior to judgment is less clear and will be discussed further in the Motion to Dismiss section below.

only one exception, Plaintiff's claim is ripe for judicial review.[5] The district court may determine the rights and relationships between the parties before the underlying state litigation has reached judgment. *See id.* Further, the Court is satisfied that it has statutory subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a). The parties are completely diverse (ECF No. 1) and the amount in controversy of the underlying Turnbow Action exceeds $130,526.75. (ECF No. 54 at 2.) In sum, the Court may exercise jurisdiction over this case.

But whether to hear a case under the Declaratory Judgment Act is committed to the Court's "unique and substantial discretion." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "In exercising its authority under the Declaratory Judgment Act, a district court: 'should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Acuity v. Cifuni*, Case No. 2:19-cv-01879-GMN-DJA, 2020 WL 5763606, at *2 (D. Nev. Sept. 28, 2020) (referencing the three *Brillhart* factors). These prudential considerations reflect the core concerns of "how judicial economy, comity, and federalism are affected in a given case." *Dizol*, 133 F.3d at 1225. Therefore, the Court must still analyze the jurisdictional facts of this case using the *Brillhart* factors to determine whether it should.

While it is a close call, the Court finds that exercising jurisdiction over Plaintiff's request for relief ultimately would be appropriate under the *Brillhart* factors and other prudential reasoning. The first *Brillhart* factor—discouraging needless litigation of state-law issues—weighs most heavily against exercising jurisdiction because each of the declarations that Cincinnati seeks requires a determination of purely state-law issues. *See R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) ("In prior cases, [the Ninth Circuit] ha[s] recognized that needless determination of state law issues alone may support remand."); *see also Acuity*, 2020 WL 5763606 at *2 (reasoning there was

---

[5]The Court will address whether Plaintiff's claim that there is no duty to defend or indemnify Defendants under the Exemplary or Punitive Damages" exclusion is ripe more specifically below in the Motion to Dismiss section.

little federal interest for a district court sitting in diversity to decide insurer's declaratory relief action that solely involved interpretation of Nevada insurance law). But the Supreme Court's concern in *Brillhart* that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties," is not present here. 316 U.S. at 495. The Turnbow Action does not address the "same issues" as this action, and the dispute in the Turnbow Action involves a tort claim between Turnbow and Defendants, not a contract claim between Plaintiff and its insureds. While the Court recognizes that it may need to determine the rights of the parties under Nevada law, the concerns expressed by the first *Brillhart* factor are not implicated here.

Because there is no clear evidence of forum shopping, the second *Brillhart* factor is neutral. *See Cincinnati Ins. Co. v. Nat'l Print Grp.*, Case No. 2:14-cv-2174-GMN-VCF, 2015 WL 5009298, at *3 (D. Nev. Jul. 29. 2015) (finding the factor neutral when there is no evidence of forum shopping). While this action may appear to be "reactive litigation" that the Ninth Circuit disfavors, there is no pending state court action between the parties to the declaratory judgment action. *See Ticor Title Ins. Co. of Cal. v. Am. Res., Ltd.*, 859 F.2d 772, 777 n.7 (9th Cir. 1988) (discouraging exercise of jurisdiction over "a declaratory judgment action brought by an insurance company against its insured during the pendency of a non-removable state court action presenting the same issues of state law"); *see also State Farm Mut. Auto. Ins. Co. v. Garcia*, Case No. 2:13-cv-02099-GMN-VCF, 2014 WL 3421641, at *4 (D. Nev. Jul. 9, 2014) (considering it "important" that the insured defendant had not filed an action in state court against the declaratory judgment plaintiff). Moreover, the issues of insurance contract interpretation that Plaintiff raises here are dissimilar from the negligence and strict liability claims Turnbow will litigate against Defendants in the underlying Turnbow Action. *See Ticor Title Ins. Co.*, 859 F.2d at 777 n.7.

The third *Brillhart* factor, cautioning against duplicative litigation, also does not weigh against the Court's exercise of jurisdiction. While the underlying tort action will

address whether Defendants breached a duty of care owed to Turnbow, it is by no means clear that the issues grounding the exclusions in the Policy will be similarly litigated. It is conceivable that some issues Plaintiff raises involve disputes of fact that will likely be litigated in the underlying Turnbow Action—for example, whether Defendants had knowledge that the horse which injured Ms. Turnbow, Indy, was aggressive and could injure guests would be relevant to the negligence and strict liability claims, and could also implicate whether Ms. Turnbow's injury was an "Expected or Intended Injury" that could be excluded from the policy. (ECF Nos. 1 at 2, 5; 10 at 7.) But determining whether Plaintiff must defend or potentially indemnify Defendants in the Turnbow Action ultimately does not address whether Defendants breached a duty of care to Turnbow. Moreover, other issues Plaintiff's declaratory relief claim raises are unlikely to be litigated in the Turnbow Action—for example, whether the horse, Indy, was 'boarding' on Defendants' premises or simply being otherwise housed there, or whether Turnbow could be considered a participant in a "games, sport, contest, race, exhibition, demonstration, special event, performance or show." (ECF No. 1 at 6 ("Designated Operation or Work" and "Participants and Contestants" Exclusions, respectively).) Even though there may be some overlapping facts litigated in both cases, the issues ultimately are different and unlikely to produce duplicative litigation.

Because the *Brillhart* factors do not weigh in favor of abstention, the Court will exercise jurisdiction over Plaintiff's declaratory judgment action.

**B. Dismissal**

Turnbow moves to dismiss Plaintiff's claim as it relates to three coverage exclusions, and dismiss or stay the case as it relates to the fourth until the punitive damages question becomes ripe. (ECF No. 10 at 2.) Turnbow argues Plaintiff's Complaint is "facially deficient to grant the relief requested" and "has not crossed the line 'from conceivable to plausible.'" (*Id*.) Specifically, Turnbow argues that Plaintiff "provides no factually plausible connection between the exclusions and the facts in Ms. Turnbow's State Court Complaint." (*Id.* at 5.) Defendants joined the Motion to Dismiss without

alteration or additional argument. (ECF No. 14 at 1.) Because Plaintiff fails to plausibly state a claim under any of the four identified exclusions, the Court will grant the Motion to Dismiss with leave to amend as to the first three exclusions. The Court will dismiss Plaintiff's claim under the fourth exclusion without leave to amend as to the duty to defend, but with leave to amend as to the duty to indemnify when the question becomes ripe.

**1. Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id*. at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id*. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the Court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679

(alteration in original) (internal quotation marks and citation omitted). That is insufficient. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570. Dismissal of a complaint without leave to amend is only proper when it is clear the complaint could not be saved by any amendment. *Ariz. Students Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016); *see also* Fed. R. Civ. P. 15(a)(2) (instructing district courts to "freely give leave" to amend).

**2. Analysis**

Nevada law interprets insuring clauses "broadly so as to afford the greatest possible coverage to the insured." *Nat'l Union Fire Ins. Co. of State of Pa., Inc. v. Reno's Exec. Air., Inc.*, 682 P.2d 1380, 1383 (Nev. 1984). "Because the Insurer is the one to draft the policy, an ambiguity in that policy will be interpreted against the insurer." *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011). Accordingly, "clauses excluding coverage are interpreted narrowly against the insurer." *Nat'l Union Fire Ins. Co.*, 682 P.2d at 1383. "[I]f an insurer wishes to exclude coverage by virtue of an exclusion in its policy, it must (1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding [coverage] under the exclusion is the only interpretation of the exclusion that could fairly be made, and (3) establish that the exclusion clearly applies to this particular case." *Powell*, 252 P.3d at 674. "Ultimately, a court should interpret an insurance policy to 'effectuate the reasonable expectations of the insured.'" *Id.* at 672 (quoting *Nat'l Union Fire Ins. Co.*, 682 P.2d at 1383).

To survive the Motion to Dismiss, Plaintiff's Complaint must plausibly allege that, based on the facts included in the Complaint, a coverage exclusion applies and, because the exclusion applies, Plaintiff may be entitled to declaratory judgment that it has no duty to defend and no duty to indemnify. None of the exclusions plausibly provides relief. As pleaded, the "Expected Or Intended Injury," "Designated Operation or Work," and "Participants and Contestants" exclusions do not plausibly state a claim upon which relief could be granted. Finally, the language of the "Exemplary or Punitive Damages" exclusion

completely prevents Plaintiff's requested relief that it has no duty to defend, but may permit the requested relief that its duty to indemnify is limited. The Court considers each of the four exclusions Plaintiff relies upon in its Complaint in turn.

#### a. "Expected Or Intended Injury" Exclusion

The Policy excludes coverage for bodily injury that is "expected or intended from the standpoint of the insured." (ECF No. 1-2 at 21 ("Expected Or Intended Injury").) But Plaintiff does not state in its Complaint that Turnbow's injury was 'expected' or 'intended' by Defendants. Instead, Plaintiff reiterates that Turnbow alleges in her state court complaint that Indy injured several people before Turnbow, and that Defendants knew Indy was unreasonably dangerous. (ECF No. 1 at 2-3.) The Court must therefore infer that Plaintiff requests declaratory relief under this exclusion because Defendants' alleged prior knowledge amounts to an 'expected or intended injury.'

Turnbow does not make a claim for intentional tort against Defendants in the Turnbow Action, but does allege that Defendants had prior knowledge of Indy's dangerous propensity and that, accordingly, they should be held strictly liable. (ECF No. 1 at 3.) Although the Policy language mirrors common "intentional act" exclusions, *see* 3 Allan D. Windt, *Insurance Claims and Disputes* § 11:9 (6th ed. 2020),[6] there is no clear labelling in the Policy that specifies whether this exclusion is broader than a traditional intentional act exclusion. The Court therefore will construe this term, for the purposes of the Motion to Dismiss, as ambiguous in meaning and with broad coverage for the insureds. *See Powell*, 252 P.3d at 674; *Nat'l Union Fire Ins. Co.*, 682 P.2d at 1383. To successfully argue that this exclusion prevents coverage, Plaintiff must first establish a clear interpretation of this provision and, second, show that its interpretation is the only fair definition. *See Powell*, 252 P.3d at 674. Plaintiff's Complaint does neither.

///

[6]"The exclusion for intentionally caused injury, or injuries *expected or intended* by the insured, applies when the insured intended to cause not only the event that resulted in the harm, but also the resulting injury or harm itself. As a general rule, therefore, one must look to the subjective intent of the insured." *Id.*

When interpreting expected injury exclusions, Nevada law requires some subjective intent by the insureds. *See Allstate Ins. Co. v. Sanders*, 495 F. Supp. 2d 1104 (D. Nev. 2007) (finding that expected injury exclusion did not apply to throwing a metal sign from a distance of 10-20 feet away during horseplay because hitting a man in the eye was improbable and the injury could not be expected); *Beckwith v. State Farm Fire Ins. Co.*, 83 P.3d 275, 277 (Nev. 2004) (finding that intentional act exclusion applied when intoxicated insured punched someone because, although it was not voluntary, the act of striking was intentional); *Capitol Indem. Corp. v. Wright*, 341 F. Supp. 2d 1152, 1157-58 (D. Nev. 2004) (finding that an expected or intended injury exclusion did not preclude coverage for an insured corporation in an action for intentional harm by an employee because negligence was not enough to trigger the exclusion). The Court cannot infer such subjective intent from the Complaint. At this stage in the litigation, questions about Defendants' responsibility for Indy's actions, Indy's prior injurious behavior, and Defendants' knowledge about Indy's dangerous proclivities all remain open. The Court agrees with Turnbow's argument that Plaintiff's Complaint relies heavily on inferences that connect the allegations in Turnbow's complaint to the Policy exclusions. For Plaintiff's Complaint to plausibly state a claim upon which relief could be granted, it would have to have asserted that under Nevada law, Defendants are liable for Indy's actions and that their level of culpability rose above mere negligence. The Complaint does not so allege.

Because the Court finds that Plaintiff has not plausibly alleged the facts necessary for the "Expected Or Intended Injury" exclusion to apply, the Court will dismiss Plaintiff's claim under this exclusion, with leave to amend.

#### b. "Designated Operation or Work" Exclusion

The Policy also excludes coverage for bodily injury "[a]rising out of or caused by the operations designated in the schedule," where operations are defined as "Horse Training, Horse Riding Training, Animal Boarding, Sale of animals or animal handling products." (ECF No. 1-2 at 63.) Turnbow makes two general arguments that this exclusion does not apply. (ECF No. 10 at 7-10.) First, she argues that under the specific exclusions

of the policy, "feeding" is not an operation that would exclude coverage. (*Id.* at 8.) Second, she argues that her injury was not caused by animal boarding because there is no assertion that Indy was being boarded at Defendants' facility and not merely housed there. (*Id.* at 9.) Plaintiff does not respond directly to these arguments, but instead asserts that the Complaint should not be dismissed because Defendants are on notice of what the claims will be.[7]

Plaintiff's Complaint does not plausibly show an entitlement to declaratory relief under this exclusion. Plaintiff does not state which defined operation Turnbow's injury would fall under, only that "all of the allegations of Ms. Turnbow arose out of the operations of Red Rock." (ECF No. 1 at 7.) But injuries arising generally out of the operations of Defendants' business are not de facto excluded from coverage. Only injuries arising out of the four stated operations will be excluded. *See Nat'l Union Fire Ins. Co.*, 682 P.2d at 1383 (holding exclusions should be construed narrowly and in favor of providing coverage).

Because Plaintiff has failed to plausibly connect the facts of the incident with the four stated operations in the "Designated Operation or Work" exclusion, the Court will dismiss Plaintiff's claim for declaratory relief that it has no duty to defend or indemnify under that exclusion, with leave to amend.

### c. "Participants and Contestants" Exclusion

The Policy excludes coverage for bodily injury to "any person while practicing, instructing, supervising, officiating, training or participating in any physical exercise, game, sport, contest, race, exhibition, demonstration, special event, performance, or show." (ECF No. 1-2 at 65 ("Exclusion – Participants and Contestants").) As above, Plaintiff has made no allegation in its Complaint that Turnbow was a participant or

---

[7]Notice-pleading is no longer sufficient to survive a motion to dismiss. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) ("*Iqbal* and *Twombly* moved us away from a system of pure notice pleading. In addition to providing fair notice, the complaint's allegations must now suggest that the claim has at least a plausible chance of success.").

contestant in any of the listed events. Accordingly, the Court can only infer an implausible relationship between the allegations in the Complaint and this policy exclusion.

The parties generally agree that Turnbow was injured when she was "at Red Rock feeding horses." (ECF No. 1; ECF No. 11 (admitting the "general characterization of Turnbow's claims").) A plain meaning interpretation of the policy exclusion would bar coverage for persons who are engaged in some sort of organized activity. But simply interacting with horses is insufficient to trigger a 'participants and contestants' exclusion. *See, e.g.*, *Diamond State Ins. Co. v. Gulli*, Case No. 2:10-cv-2159 JCM (GWF), 2012 WL 2072854, at *3 (D. Nev. Jun. 8, 2012) ("Simply walking a horse to an area to rope cattle with a friend is not practice for or participation in an equestrian event."). Feeding a horse, with or without permission, dose not rise to the level of 'participating' in a 'special event.' Plaintiff has failed to plausibly allege that this exclusion would bar coverage for bodily injury that resulted from the type of activity that the parties agree occurred. Accordingly, the Court will dismiss Plaintiff's claim for declaratory relief that there is no duty to defend or indemnify under the "Participants and Contestants" exclusion, with leave to amend.

**d. "Punitive or Exemplary Damages" Exclusion**

Turnbow finally argues that the question of whether Plaintiff has a duty to defend or indemnify Defendants for claims involving punitive damages is not ripe. (ECF No. 10 at 11-13.) The Court agrees that the Plaintiff's request for a declaratory judgment that it has no duty to indemnify Defendants is not ripe—and will not be—until judgment is entered in the Turnbow Action. Plaintiff's request for declaratory relief that it has no duty to defend a claim for punitive damages, however, is ripe, and the Court will dismiss it.

Regarding its duty to defend under this exclusion, Plaintiff has failed to state a claim on which its request for declaratory judgment could be granted. Plaintiff's claim is ripe because Turnbow requested punitive damages in her complaint (ECF No. 1-1 at 8) and an insurer's duty to defend arises "whenever it ascertains facts which give rise to the potential of liability under the policy." *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1157 (Nev. 2004). The Policy explicitly provides that "[i]f a suit is brought

against any insured for a claim covered by this Cover-age Part, seeking both compensatory and punitive or exemplary damages, we will provide a defense to such action." (ECF No. 1 at 5.) Based on this language, there is no reasonable reading of this exclusion that would abrogate Plaintiff's duty to defend a claim otherwise covered by the Policy. *See Powell*, 252 P.3d at 672. Because amendment would be futile, the Court will deny Plaintiff leave to amend its claim that it has no duty to defend under "Punitive or Exemplary Damages" exclusion.

Further, the Court finds that Plaintiff's request for declaratory judgment on its duty to indemnify is not yet ripe. The Ninth Circuit has not distinguished between the duty to defend and the duty to indemnify when determining whether a claim for declaratory judgment is ripe. *See Kearns*, 15 F.3d at 144 (finding a declaratory judgment action was ripe before any judgment had been entered). It has, however, suggested that a declaratory relief claim to determine an insurer's duty to indemnify prior to final judgment in the underlying action is not an actual controversy. *See Ticor Title Ins. Co. of Cal. v. Am. Resources, Ltd.*, 859 F.2d 772, 777 n.7 (9th Cir. 1988) ("We note that none of the pending actions had determined whether and to what extent [the insureds] are liable to [the underlying claimant]; it is therefore doubtful that there exists an actual controversy concerning [insurer's] obligation to indemnify its insured."). Because the Ninth Circuit leaves this question somewhat open, the Court considers Nevada substantive law to determine whether Plaintiff's claim is ripe. *See Hunt v. State Farm Mut. Auto. Ins. Co.*, 655 F. Supp. 284, 286 (D. Nev. 1987) (citing *St. Paul Fire and Marine Ins. Co. v. Weiner*, 606 F.2d 864, 867 (9th Cir. 1979)) ("In this declaratory judgment action, in which subject matter jurisdiction is based solely on diversity, the question whether a justiciable controversy exists within the purview of the Declaratory Judgment Act, 28 U.S.C. § 2201, is determined by federal law. Where, however, substantive law governing the rights of the parties is relevant to the Court's analysis, state law applies.") (internal citations omitted).

The Nevada Supreme Court construes the two duties as distinct in purpose and form. *See Century Sur. Co. v. Andrew*, 432 P.3d 180, 183 (D. Nev. 2018) ("Courts have

uniformly held the duty to defend to be separate from and broader than the duty to indemnify. The duty to indemnify provides those insured financial protection against judgments, while the duty to defend protects those insured from the action itself.") (internal quotations omitted). Under Nevada law, an insurer's duty to indemnify "arises when an insured 'becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy.'" *United Nat'l Ins. Co.*, 99 P.3d at 1157. Because federal law finds it "doubtful" that a declaratory judgment claim that there is no duty to indemnify would be ripe until after judgment is entered, *Ticor Title Insurance Company of California*, 859 F.2d at 777 n.7, and Nevada law holds that the duty to indemnify does not arise until there is a legal obligation to pay damages in the underlying action, *United National Insurance Company*, 99 P.3d at 1157, the Court finds Plaintiff's claim is not yet ripe and will not be until a judgment is entered in the Turnbow Action.

The Court therefore will dismiss Plaintiff's claim for declaratory judgment that it has no duty to defend under the "Punitive or Exemplary Damages" exclusion, without leave to amend. The Court will dismiss Plaintiff's claim for declaratory judgment that this exclusion will prevent Plaintiff from indemnifying Defendants for any award of punitive damages as unripe, with leave to refile once judgment is entered in the Turnbow Action.

**3. Conclusion**

To restate and summarize, the Court will grant the Motion to Dismiss as to the "Expected Or Intended Injury," "Designated Operation or Work," and "Participants and Contestants" exclusions, with leave to amend. Plaintiff's claim requesting declaratory judgment that it has no duty to defend under the "Exemplary or Punitive Damages" exclusion is denied without leave to amend; its claim requesting declaratory judgment that is has no duty to indemnify for potential future punitive damages is dismissed as the claim will not be ripe until judgment is entered in the Turnbow Action. Because there is no longer a request for declaratory relief before the Court, the Motion to Stay is denied as moot.

///

**IV. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Interested Party Tracy Turnbow's motion to dismiss (ECF No. 10) is granted as specified herein. Should Plaintiff wish to amend its claims as provided for herein, Plaintiff must file an amended complaint within 15 days. In the alternative, Plaintiff may elect not to amend but to file a subsequent action once its declaratory relief claim relating to its duty to indemnify for potential future punitive damages is ripe.

It is further ordered that Defendants' motion to stay this case (ECF No. 15) is denied as moot.

DATED THIS 6th Day of January 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE